**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ADAM M. GLOWKA,                                     Case No. 1:25-cv-838

     Plaintiff,                                        Hopkins, J.
                                                    Bowman, M.J.

     v.

WARREN COUNTY CHILD SUPPORT
ENFORCEMENT AGENCY, et al.,

     Defendants.

**REPORT AND RECOMMENDATION**

On November 17, 2025, Plaintiff Adam M. Glowka, proceeding pro se, moved for leave to file a complaint in this Court *in forma pauperis*, or without payment of fees. (Doc. 1). Attached to Plaintiff's motion/application is a copy of the proposed complaint. (Doc. 1-1). On November 24, 2025, Plaintiff moved for leave to file an amended complaint. (Docs. 3 and 3-1.) On December 1, 2025, Plaintiff moved for leave to file a second amended complaint. Pursuant to local practice, Plaintiff's pleadings have been referred to the undersigned for initial consideration. For the reasons explained below, this case should be DISMISSED.

**I. General Screening Authority**

By separate Order issued this date, Plaintiff has been granted leave to proceed *in forma pauperis*. His two motions to amend his complaint also have been granted (at least in part). As amended, Plaintiff's complaint is now before the Court for a sua sponte review to determine whether it, or any portion of it, should be dismissed because it is frivolous,

malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if satisfied that the action is frivolous or malicious. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *see also* 28 U.S.C. § 1915(e)(2)(B)(i). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams*, 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327.

Congress has also authorized the sua sponte dismissal of complaints which fail to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). Although a plaintiff's pro se complaint must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers," the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotation omitted)). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915(e)(2)(B)(ii) and 1915A(b)(1)).

2

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557.

## II.  Factual and Procedural Background

At the heart of Plaintiff's federal complaint is his contention that he paid too much in child support for three of his children for more than a decade. According to Plaintiff's complaint, the overpayments occurred because a multitude of Defendants assessed and collected too much from Plaintiff's SSDI benefits, while simultaneously failing to properly credit derivative Social Security Disability income ("SSDI") payments received by the custodial parents of Plaintiff's children against his child support obligations. The state court's past denial of Plaintiff's requests for relief led him to seek relief from this Court. The state court's actions also form the basis of new claims against state court judicial officers and deputy clerks of court. As discussed below, his original complaint and two

amendments to that pleading identify a total of fifteen Defendants alleged to be responsible for his injuries.[1]

## A. Judicial Notice of Prior and Pending State Court Proceedings

This Court may take judicial notice of state court records. Here, Plaintiff has attached copies of two relevant state court decisions to his pleadings. The decisions, dated October 27, 2025 and January 15, 2020 (hereafter the "October 2025" and "January 2020" decisions), provide context for Plaintiff's federal complaint.

The October 2025 decision followed an evidentiary hearing[2] in the Warren County Juvenile Court. Initially written by Magistrate Jeffrey W. Stueve, it was adopted as the decision and final judgment of the court by Common Pleas Judge Joseph W. Kirby. (*See* Doc. 3-1, PageID 250-260.) The October 2025 decision denies Plaintiff's May 7, 2025 motion to modify a prior court order. As of the date of this R&R, Plaintiff's appeal of the October 2025 decision is pending in the Ohio Court of Appeals.[3]

In his unsuccessful "motion to modify," Plaintiff sought an additional audit of his child support payments by the Warren County CSEA from January 3, 2015 through the

---

[1]The fifteen Defendants are as follows: (1) Warren County Child Support Enforcement Agency ("Warren County CSEA"); (2) Butler County Child Support Enforcement Agency ("Butler County CSEA"); (3) Ohio Department of Job and Family Services ("ODJFS"); (4) Thomas Ea Howard, Warren County CSEA Director; (5) Julie Gilbert, Butler County CSEA Director; (6) Alaina Bidlack, Warren County CSEA Prosecutor; and (7) Gregory (David) Forsnell, Warren County Prosecutor; (8) Magistrate Jeffrey W. Stueve, Warren County Juvenile Court; (9) Magistrate Jenna L. Seitz, Warren County Juvenile Court; (10) Judge Joseph W. Kirby, Warren County Court of Common Pleas, Juvenile Division; (11) Warren County, Ohio, by and through its Board of County Commissioners; (12) Butler County, by and through its Board of County Commissioners; (13) Alishia Hounshell, Warren County Deputy Clerk; (14) Elizabeth Leisz, Warren County Deputy Clerk; and (15) Meredith Begley, Butler County Chief Deputy Clerk.

[2]Plaintiff disputes the actual date on which he appeared before Magistrate Stueve. The face of the decision states: "On October 27, 2025 [the date the decision was electronically filed], this matter came before MAGISTRATE JEFFREY W. STEUVE for TRIAL." (Doc. 3-1, PageID 250.) However, Plaintiff alleges that the date of the trial was October 21, 2025, six days before the decision was filed of record.

[3]Plaintiff appears to have filed a portion of a 187-page brief that he filed in the 12th District of the Ohio Court of Appeals. (Doc. 1-1, PageID 145-149; *see also id*. at PageID 16, citing to Notice of Appeal No. 2025-11-106.)

present, as well as an order for a refund of all overpayments, costs, damages, and "pro se attorney fees." (Doc. 3-1, PageID 250; *see also id*., PageID 253.) The October 2025 decision refers to a prior audit with which Plaintiff was dissatisfied. His May 2025 motion argued that the earlier audit failed to fully credit him with SSDI derivative benefits.

The state court rejected Plaintiff's arguments as "without merit." (*Id.,* PageID 253.) To begin with, the state court held that Plaintiff's failure to appeal a prior January 2020 decision barred most of his arguments under res judicata. In addition, Magistrate Stueve reasoned that the record, including two audits and testimony by CSEA employee Kim Reisinger, proved that Plaintiff "has been receiving full credit for the social security derivative benefits since January 15, 2020." (*Id*.) In other words, while the state court agreed that Plaintiff was entitled to a "'dollar for dollar' offset …for the amount of the derivative benefits," the court flatly rejected Plaintiff's position that he had not been awarded that offset. (*Id*., PageID 254.) Last, the state court explained that it was barred from granting Plaintiff the relief he sought because his motion was filed after the termination of child support. Ohio R.C. § 3119.84 "permits retroactive modification of child support only for the period between filing a motion for modification and a final order on the motion." (*Id*., PageID 256-257, additional internal citation omitted.) So even if it had found in Plaintiff's favor (which it did not), the court would have been limited to reducing Plaintiff's monthly payments on his arrearages – with no effect on the total amount of support owed, which had become final when ongoing child support was terminated in December 2024. (Doc. 3-1, PageID 257.)

The October 2025 decision includes a helpful summary of the prior child support proceedings. The initial child support order was filed on September 25, 2013. In March

5

2018, the CSEA determined that there was no basis for modifying that order. Plaintiff did not object or appeal. (*Id.*, PageID 251.) On June 20, 2018, the court ordered seizure of Plaintiff's lump sum social security disability award in the amount of $14,772.19 to satisfy an arrearage order then in effect. Again, Plaintiff "took no action to attempt to have his child support modified." (*Id.*) In September 2018, the CSEA reduced Plaintiff's monthly child support order to $79.32, effective March 1, 2018 as an ongoing credit based on the derivative social security benefits received by the child. Once again, Plaintiff did not object or appeal that calculation.

But on October 29, 2019, Plaintiff moved for an additional credit based on his own calculation of the derivative benefits. The CSEA responded with a competing motion. (*Id.,* PageID 252.) The state court ruled in favor of the CSEA in the second state court decision that is central to Plaintiff's federal complaint  – the January 2020 decision. (*See* Doc. 3-1, PageID 247-249.)

The January 2020 decision, authored by Magistrate Seitz, denied Plaintiff's motion to compel Warren County CSEA to refund a $3,063.24 overpayment instead of applying it as a credit against his future child support obligation. (Doc. 3-1, at PageID 248.) Magistrate Seitz also declined to adjust the September 2018 Recommendation that previously calculated the ongoing SSDI derivative benefit offset, both because the calculation appeared to be correct and because Plaintiff had not timely objected to it. (*Id.*, PageID 247-248.)

Plaintiff did not appeal the January 2020 decision. And as stated, the state court terminated child support in December 2024. (*Id.*, PageID 252-253.) Months later on May

7, 2025, Plaintiff filed the "motion to modify" that resulted in the October 2025 decision that is currently on appeal in the Ohio Court of Appeals.

### B. Plaintiff's Compilation of Three Pleadings

Having set the stage with the background provided by the October 2025 and January 2020 state court decisions, the undersigned turns to Plaintiff's complaint - which in this case is comprised of three separate documents. Ordinarily an amended complaint supersedes or replaces the original complaint. However, Plaintiff's two "amended" pleadings (Doc. 3-1 and Doc. 7-1) "*incorporate[] by reference* all allegations, facts, exhibits, and cause of action from *the Original Complaint.* (Doc. 3-1, PageID 222, emphasis added; *see also* Doc. 3-1, PageID 233 (restating its "Incorporation by Reference" of the entirety of the original complaint, and asserting that the amendment "supplements and adds to, but does not replace, the Original Complaint"); Doc. 7-1, PageID 374 (construed as incorporating by reference the original complaint and the first amended complaint).) Both the first amended complaint and the second amended complaint concern events that occurred prior to the filing of the original complaint. Therefore, both are properly considered as amended complaints rather than as supplemental pleadings.[4]

Combined, the original complaint, the first amended complaint, and the second amended complaint total a daunting 291 pages in the electronic record.[5] Portions of the

---

[4]Plaintiff's first motion to amend refers to "supplemental" allegations based on "new" evidence. While amended complaints are governed by Rule 15(a), supplemental complaints are governed by Rule 15(d). A supplemental pleading differs from an amended pleading because "an amended pleading relates to matters which occurred prior to the filing of the original pleading and entirely replaces such pleading; a supplemental pleading addresses events occurring subsequent to the initial pleading and adds to such pleading." *Brian A. v. Bredesen,* No. 3:00-cv-0445, 2009 WL 4730352, at *1 (M.D. Tenn. Dec. 4, 2009).

[5]Plaintiff's original complaint spans 27 pages, to which Plaintiff has appended an additional 148 pages of exhibits. Plaintiff's first amended complaint spans 13 pages to which he has appended an additional 85 pages of exhibits. Plaintiff's third amended complaint consists of 18 pages, with no exhibits.

complaints are duplicative, but most are not. Some of the paragraphs and claims are numbered; others are not. The use of the same numbers rather than consecutive numbers for paragraphs and claims "incorporated" among the three separate pleadings, together with the volume of pages and disorganized nature of presentation, significantly added to the difficulty of screening this case under 28 U.S.C. § 1915(e)(2)(B). While the undersigned has now completed that analysis, the unwieldy nature of Plaintiff's pleading(s) does not comply with Rule 8. If this case is not dismissed, the undersigned alternatively recommends that Plaintiff be required to file a third amended complaint that does not "incorporate by reference" any prior pleadings, but stands alone as a short, plain statement of his claims.

### 1. Original Complaint

Plaintiff's original complaint identifies seven Defendants: (1) Warren County Child Support Enforcement Agency ("Warren County CSEA"); (2) Butler County Child Support Enforcement Agency ("Butler County CSEA"); (3) Ohio Department of Job and Family Services ("ODJFS"); (4) Thomas Ea Howard, Warren County CSEA Director; (5) Julie Gilbert, Butler County CSEA Director; (6) Alaina Bidlack, Warren County CSEA Prosecutor; and (7) Gregory (David) Forsnell, Warren County Prosecutor. Plaintiff includes the following "Preliminary Statement" as a brief summary:

> This is a civil rights action arising from a systematic, twelve-year campaign of deliberate constitutional deprivation, disability discrimination, fraud upon the court, and abuse of process perpetrated by Defendants Warren County Child Support Enforcement Agency (CSEA), Butler County CSEA, and the Ohio Department of Job and Family Services(ODJFS) against a disabled, low-income ex-offender struggling to rebuild his life.
>
> Plaintiff…, a disabled individual receiving …(SSDI), was released from federal prison on June 25, 2015, with a $20,000 child support arrearage. … Defendants implemented and maintained a deliberate policy of refusing to

> credit Social Security derivative benefits paid on behalf of his minor children - despite clear, controlling legal mandates requiring dollar-for-dollar crediting under *Williams v. Williams*, 88 Ohio St.3d 441 (2000).
>
> Instead of crediting the $95/month per child in derivative benefits. Defendants continued to assess and collect $287/month from [Plaintiff's] $982/month SSDI benefits, reducing his net income to…an amount insufficient for housing, food, mental health treatment, or compliance with federal supervised release obligations.

(Doc. 1-1, PageID 7-8.)

Plaintiff alleges that he was determined to be disabled by the Social Security Administration on January 1, 2015 due to mental illness. At the time, Plaintiff was incarcerated. (Doc. 1-1, PageID 11.) He was released from custody on June 25, 2015, and thereafter began receiving his SSDI payments. (*Id*. at PageID 11-12.) But by the time he was released, Plaintiff owed arrearages of approximately $20,000 in child support. (*Id*.)

It was at that point that Plaintiff alleges his troubles with Defendants began. According to Plaintiff, Defendants failed to modify his support obligation or to properly credit the derivative $95 per month per child SSDI benefits that his children began receiving. (*Id*., PageID 11-12.) Plaintiff generally alleges that Defendants' conduct resulted in his overpayment of $287 per month from his own SSDI payments for more than a decade, totaling $35,588. Plaintiff alleges that he made attempts to remedy the situation, but that Defendants "systematically sent hearing notices to incorrect addresses, knowing that Plaintiff was homeless or transient, thereby preventing him from participating in hearings where he could contest the unlawful collections." (*Id*., PageID 13.) On the (unspecified) occasions when he did appear, Plaintiff alleges that Defendants prevailed on "default judgments" that did not address the derivative benefit issue. (*Id*.)

9

In addition to the alleged failure to properly credit the SSDI derivative benefit payments for more than a decade, Plaintiff broadly alleges that unspecified Defendants wrongfully intercepted and retained his federal tax stimulus payments from 2020 through 2022, as well as other (unspecified) tax refunds and federal offsets, all without sufficient due process. (*Id.*, PageID 14.) Also, Plaintiff alleges that the Social Security Administration awarded him "substantial back payments in March 2025" which included retroactive derivative benefits paid to the custodial parents. Again, however, Plaintiff alleges that Defendants failed to properly credit those derivative payments against his child support obligations. (*Id.,* PageID 15.) Last, Plaintiff alleges that at least two of his three children[6] are 18 and emancipated, but that Defendants failed to properly adjust his support obligations after the dates of their respective emancipations. (*Id.*)

Plaintiff alleges that at the October 2025 hearing before Magistrate Stueve, Warren County CSEA officials knowingly gave false testimony regarding the amounts and dates of SSDI derivative benefit payments, and that their testimony "was designed to suggest that all derivative benefits had been properly credited and that Plaintiff remained liable for the full $287/month obligation…." (Doc. 1-1, PageID 15-16.) Plaintiff further alleges that Defendants Warren County CSEA, Butler County CSEA, and ODJFS "have maintained a systematic policy, custom, and practice under which SSDI derivative benefits are routinely NOT credited to disabled obligors' accounts statewide." (*Id.*, PageID 17.) Plaintiff alleges that "Defendants' unlawful policy" resulted in, among other deprivations: the wrongful collection of tens of thousands of dollars from him, deprivation of his due process and equal protection rights, discrimination in violation of Title II of the Americans with

---

[6]Plaintiff's second amended complaint alleges that his third child is also now 18 years of age.

Disabilities Act, fraud upon the court, and re-incarceration, homelessness, mental health crisis and breach of his supervised release compliance. (*Id.*, PageID 8.)

In addition to Defendants' alleged violations against him, Plaintiff seeks to recover on behalf of other SSDI recipients whose children receive derivative benefits, resulting in up to $9 billion dollars in lost credits. Plaintiff seeks to represent similarly-situated individuals as a class representative, and seeks "class-wide injunctive relief, mandatory statewide audit, policy reform, and restitution totaling not less than $8 billion" on their behalf. (Doc. 1-1, PageID 9; see also id., PageID 26-27.)

## 2. The First Amended Complaint

Plaintiff's first amended complaint names Magistrate Seitz, Magistrate Stueve, and Judge Kirby as additional Defendants based on their respective January 2020 and October 2025 judicial decisions.[7] For example, Plaintiff highlights a sentence contained in the analysis portion of Magistrate Seitz's January 2020 decision wherein she acknowledged that a change in benefits could change the offset amount in the future. "While the Court acknowledges that derivative benefit could change/increase [in the future], the CSEA will conduct an audit upon the closure of the case to ensure Father was given any dollar for dollar credit deserved." (*Id.*, PageID 248.) Relying heavily on that comment, Plaintiff suggests that Magistrate Stueve and Judge Kirby were required to recalculate the derivative benefits offset in his favor once his youngest child reached the age of majority. (*See* Doc. 3-1, PageID 222.)

---

[7]The first amended complaint purportedly incorporates all original allegations and causes of action, but also lists the following "supplemental" causes of action: "Fraud Upon the Court by Magistrate Jeffrey W. Stueve," "Judicial Absence of Jurisdiction – Denial of Reserved Issue," "Judicial Predetermination and Bias," "Excessive Court Fee as ADA Discrimination and Barrier to Appeal," and "Civil Conspiracy to Deprive Civil Rights."

Plaintiff alleges that Magistrate Stueve was biased and hostile and committed "fraud" in October 2025 by making a "predetermination" about the derivative benefits in violation of Plaintiff's "due process" rights, mischaracterizing Plaintiff's motion and denying Plaintiff relief, failing to conduct a proper audit, deliberately misstating the trial date as October 27 on his decision instead of October 21, 2025, accepting false testimony by CSEA officials about whether the derivative benefits were properly credited, and misapplying both res judicata and other concepts of state law. (Doc. 3-1, PageID 222-226.)[8] Plaintiff also attacks Magistrate Stueve's analysis of the amount of derivative benefits, including his conclusion that Plaintiff's evidence was insufficient to prove the inaccuracy of Warren County CSEA's records.[9] Plaintiff complains that he did not obtain the relevant Social Security Administration records until the day *after* the state court entered its adverse decision. He hypothesizes that Magistrate Stueve knew when he would receive the records and therefore "rendered his decision based on testimony he knew or should have known would be contradicted the next day."

---

[8]Plaintiff's prolix pleadings contain many additional (and sometimes fantastic) allegations that do not impact the recommendation to dismiss this case in its entirety. For example, as evidence of a "conspiracy" among multiple unnamed persons and/or Defendant Stueve, Plaintiff points to a "suspicious, backwards route" taken by mail that Plaintiff alleges that he timely mailed to the court in October 2025 but that was delayed in its delivery. Plaintiff alleges that "[s]omeone with access to mail processing systems deliberately manipulated the routing to delay delivery of Plaintiff's predetermination evidence by approximately 8-9 days." (Doc. 3-1, PageID 225.)

[9]Magistrate Stueve reasoned that Plaintiff had failed to present evidence "other than self-serving testimony that the benefit exceeds the credited amount by some unknown number." (Doc. 3-1, PageID 256.) The state court acknowledged that Plaintiff had attempted to obtain records through a subpoena to the Social Security Administration. But the court also pointed out that "Father could have established the correct derivative benefit" through other means, including by "scheduling an appointment with the Social Security Administration," or calling the custodial parent and having her testify to the derivative benefit amount. (*Id.*, PageID 256.) In any event, the state court reasoned that any possible relief would have been extremely limited under state law because Plaintiff had not filed his motion until May 7, 2025, at a time when child support had been terminated and all that was left was his arrearage obligation which total was not subject to change. (Id., PageID 257.)

Plaintiff alleges that Judge Kirby violated Plaintiff's constitutional rights when he adopted Magistrate Stueve's order. (Doc. 3-1, PageID 227-228.) And he alleges Judge Kirby violated the Americans with Disabilities Act when, on November 13, 2025, he required Plaintiff to pay $300 as a deposit to obtain a copy of the transcript for purposes of filing his appeal. In addition, Plaintiff alleges that the transcript fee has a "discriminatory disparate impact" on SSDI recipients.

### 3.  Second Amended Complaint

Plaintiff's second amended complaint adds two entities and three new individual Defendants, bringing the total number of Defendants to fifteen - not including separate capacity suits brought against the individual Defendants.[10] The newly added Defendants include: Warren County and Butler County, both of which Plaintiff purports to sue "by and through its Board of County Commissioners" but without naming any of the individual Commissioners; Alishia Hounshell, Warren County Deputy Clerk; Elizabeth Leisz, Warren County Deputy Clerk; and Meredith Begley, Butler County Chief Deputy Clerk.

A "Preliminary Statement" in the second amended complaint explains that the amendment is intended to add new claims for "systematic obstruction of appellate access by county clerk offices, preventing judicial review of the unlawful collections and forcing disabled obligors into administrative-only proceedings." (Doc,. 7-1, PageID 374.) Among the new allegations, Plaintiff complains that Defendant Warren County Deputy Clerk Hounshell mishandled his appeal resulting in its filing nine days after he submitted it, and that Defendant Deputy clerk Leisz sent him an email dated November 21, 2025 stating "If it is directly filed with a specific clerk and he or she is out for an extended period of time,

---

[10]All ten individual Defendants are named in both their official and individual capacities.

then your filing is not seen or acted upon." (Doc. 7-1, PageID 379.) Plaintiff further alleges that Defendant Butler County Chief Deputy Clerk Begley sent him a letter dated January 14, 2025 that rejected his attempt to file for modification of child support for his minor son. (*Id.*) And he alleges that on May 17, 2024, Butler County CSEA sent him notice of its intent to suspend his driver's license. (*Id.*, PageID 380.)

The second amended complaint also repeats allegations against Judge Kirby relating to the $300 transcript fee and against Magistrate Stueve for failing to conduct a favorable audit allegedly "mandated" by the January 2020 decision. Plaintiff re-alleges that 11 of 15 Defendants, including: "Warren County CSEA, Butler County CSEA, Warren County, Butler County, ODJFS, Howard, Gilbert, Schulte-Bidlack, Forsnell, Stueve, and Kirby" violated 42 U.S.C. § 1983 when they deprived Plaintiff of his SSDI benefits "without due process" over many years based on the improper crediting of derivative benefits. (*Id.*, PageID 381.) He alleges that Warren County is liable for employing Hounshell and Leisz, and that Butler County is liable for employing and supervising Begley. (Doc. 7-1 at PageID 385-386.)

Plaintiff describes multiple claims as additional or "new" but many appear to be duplicative. For example, in addition to due process claims, he alleges wide-ranging "Monell Municipal Liability" against entity defendants,[11] Title II ADA discrimination, "denial of access to courts", "appellate obstruction", and "appellate obstruction and judicial access denial under § 1983 and First Amendment." In addition to these "new" claims, he expressly "incorporates rather than re-lists" the following claims: "due process, Monell,

---

[11]Plaintiff brings his *Monell* claims against Warren County CSEA, Butler County CSEA, and the two counties for vaguely alleged "policies", ranging from the failure to credit the SSDI derivative benefits, to using an incorrect address despite knowing he was homeless or transient, to delays in the docketing of his judicial filings. (Doc. 7-1, PageID 382-383.)

ADA Discrimination, fraud upon the court; unjust enrichment, abuse of process, excessive court fee as ADA discrimination and barrier to appeal, and civil conspiracy to deprive civil rights." (Doc. 7-1, PageID 381-386.)

### 4. Relief Sought in All Three Pleadings

Plaintiff seeks monetary damages (compensatory and punitive damages, attorney fees and litigation costs) for himself and alleged class members. Monetary damages are based on Plaintiff's calculations had the County CSEAs agreed with those calculations, along with related "damages" that he asserts flowed from Defendants' actions.)[12] He seeks a "[c]riminal referral of Defendants for fraud upon the court and perjury." (*Id.*, PageID 9.) He also seeks a declaratory judgment and injunctive relief that prohibits Defendants "from continuing non-crediting practices" and that requires "immediate correction of Plaintiff's ledger, calculation of overpayment, and issuance of refund or credit." (Doc. 1-1, PageID 31.) In his first and second amended complaints, he adds requests for additional injunctive and declaratory relief, including remand to state court for a "mandatory audit," and a declaratory judgment to "void" the October 2025 state court decision as fraudulent" and as "void ab initio for fraud and lack of jurisdiction." (Doc. 3-1, PageID 232; Doc. 7-1, PageID 388.)

### III. Analysis

### A. Plaintiff Cannot Represent a Class

Federal Rule of Civil Procedure 23(a)(4) generally does not permit pro se plaintiffs without legal training to serve as class representatives. *See Garrison v. Mich. Dep't of*

---

[12]*See e.g.*, Doc. 1-1, PageID 28, listing specific "compensatory" damages relating to homelessness and inability to secure housing, loss of access to mental health treatment, lost wages and employment opportunities due to re-incarceration, physical, emotional and psychological injuries, breach of supervised release, and damage to reputation, dignity and family relationships.

*Corr.*, 333 Fed. Appx. 914, 919 (6th Cir. 2009) (holding that pro se litigants are "inadequate class representatives"); *Dodson v. Wilkinson*, 304 Fed. Appx. 434, 438 (6th Cir. 2008) (holding that "[p]ro se prisoners generally may not bring class action lawsuits concerning prison conditions"). The undersigned finds no basis for departing for this well-established rule. Therefore, all claims based on "class" allegations should be dismissed.

### B. Eight Defendants are Immune from Suit

Eight of the individual Defendants identified by Plaintiff are absolutely immune from suit, including but not limited to Magistrates Seitz and Stueve and Common Pleas Judge Kirby. "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Barrett v. Harrington*, 130 F3d 246, 255 (6th Cir. 1997). Judges retain absolute immunity from liability even if they act maliciously or corruptly, as long as they are performing judicial acts and have jurisdiction over the subject matter giving rise to the suit against them. *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978); *see also Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004); *Stern v. Mascio*, 262 F.3d 600, 607 (6th Cir. 2001). Plaintiff's cursory allegations that one or more exceptions to the doctrine apply in this case does not make it so. All three judicial officers clearly acted within their judicial authority in ruling on the underlying state court case(s). Therefore, Magistrates Seitz and Stueve and Judge Kirby are absolutely immune from civil liability.

The CSEA prosecutors, Defendants Bidlack and Forsnell, are similarly immune from suit to the extent that they acted as prosecutors, and/or in their roles as advocates in obtaining the payment of child support. See *Imbler v. Pachtman*, 424 U.S. 409, 431

(1976); *Pusey v. Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993); *see also, generally, Eldridge v. Gibson*, 332 F.3d 1019, 1021-22 (6th Cir. 2003).

> Absolute immunity is extended to prosecuting attorneys when the actions in question are those of an advocate. *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir.2003). Immunity also reaches beyond the criminal process to conduct in civil proceedings where a government attorney is operating in an enforcement role in "initiating ...judicial proceedings," *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir.2000), or "undertak[ing] the defense of a civil suit," *Al-Bari v. Winn*, No. 89-5150, 1990 WL 94229, at *1 (6th Cir. July 9, 1990).

*Ellis v. Mahoning Cnty. Child Support Enforcement Agency*, No. 4:24-cv-2028-PAG, 2025 WL 524368, at *3 (N.D. Ohio, Feb. 18, 2025).

Additionally, the three Butler and Warren County clerks are entitled to absolute judicial immunity to the extent that they complied with court rules in accepting or rejecting Plaintiff's filings. As another district court within the Sixth Circuit recently explained:

> "Absolute judicial immunity is extended to non-judicial officers who perform 'quasi-judicial' duties." *MacArthur v. Eaton Cnty. 56A Dist. Ct.*, No. 1:21-CV-775, 2021 WL 4621778, at *3 (W.D. Mich. Oct. 7, 2021). "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842 (6th Cir. 1994) (probate court administrator entitled to quasi-judicial immunity for his role in carrying out the orders of the court). A court clerk or a clerk's office employee "who performs tasks that are an integral part of the judicial process is entitled to absolute quasi-judicial immunity from suits for damages." *McGee v. United States*, No. 1:10-CV-521, 2010 WL 3211037, at *2 (S.D. Ohio Aug. 12, 2010) (citing *Gallagher v. Lane*, 75 F. App'x 440, 441 (6th Cir. 2003)). " 'When a clerk files or refuses to file a document with the court, he is entitled to immunity, provided the acts complained of are within the clerk's jurisdiction.' " *McGee*, 2010 WL 3211037, at *2 (quoting *Harris v. Suter*, 3 F. App'x 365, 366 (6th Cir. 2001) (per curiam) (citing *Mullis v. U.S. Bankr. Ct. for the Dist. of Nevada*, 828 F.2d 1385, 1390 (9th Cir. 1987))). Thus, because Plaintiff's allegations stem from actions and functions "related to the judicial process and fall squarely within the scope of ... quasi-judicial immunity," *McGee*, 2010 WL 3211037, at *3, these John Doe Defendants are entitled to absolute quasi-judicial immunity, and Plaintiff's claims against them must be dismissed for seeking monetary

17

relief against a defendant who is immune from such relief. *Prinzo v. Kentucky Child Support Enforcement Division*, 2025 WL 2210780, at \*5 (W.D. Ky., 2025); *see also Stampone v. Michigan Supreme Court*, No. 1:23-cv-1166, 2024 WL 770617, \*10-11 (W.D. Mich. Feb. 26, 2024) (collecting and discussing cases holding that quasi-judicial immunity applies to court clerks).

### C. Eleventh Amendment Immunity Bars Recovery Against ODJFS

Defendant ODJFS is a state agency, and therefore entitled to immunity from monetary damages under the Eleventh Amendment. *See Woods v. DeLeone*, No. 1:25-cv-585, 2025 WL 1866641, at \*5 (N.D. Ohio Jul. 7, 2025); *Bedell v. Ohio Dep't of Jobs & Family Servs.*, No. 1:17 CV 1161, 2017 WL 6055227 \*3, (N.D. Ohio Dec. 17, 2017) (citing *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005) and *Bouquett v. Clemmer*, 626 F. Supp. 46, 48 (S.D. Ohio 1985)) (finding the ODJFS and its director absolutely immune in Section 1983 action). Therefore, Plaintiff's claims against ODJFS also should be dismissed.

### D. Multiple Claims are Time-Barred

Plaintiff's underlying allegations repeatedly refer to the failure of various Defendants to credit derivative SSDI payments dating back to 2015. The basis for many claims is poorly articulated. However, he does explicitly rely on both 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"). Under either statute, most claims are time-barred. The statute of limitations for § 1983 claims filed in Ohio is two years. *See*, *generally*, *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989); *Lovelace v. O'Hara*, 985 F.2d 847, 852 (6th Cir. 1993). Likewise, the statute of limitations for ADA claims is two years. *See McCormick v. Miami University,* 693 F.3d 654 (6th Cir.2012).

18

### E. Res Judicata

As discussed above, both the January 2020 state court decision and the more recent October 2025 state court decision denied Plaintiff relief based at least in part on principles of res judicata. More than one federal court similarly has dismissed lawsuits like this one by applying res judicata or full faith and credit to prior state court decisions on the same subject matter. *See generally*, *Ewing v. Cuyahoga Cnty. Office of Child Support Services*, No. 1:24-cv-997, 2024 WL 4252565, at *3 (N.D. Ohio Sept. 20, 2024) (dismissing case in which the plaintiff sought to relitigate his state court child support obligations as barred by res judicata).

> The term "res judicata" literally means "a matter [already] judged." *Res Judicata*, BLACK'S LAW DICTIONARY (11th ed. 2019). The doctrine of *res judicata* bars duplicative litigation based on the same event or events. *Montana v. United States*, 440 U.S. 147, 153, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979); *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979). When one court has already resolved the merits of a case, another court will not revisit them. *Id.* The doctrine of *res judicata* therefore precludes a party from bringing a subsequent lawsuit on the same claim or from raising a new defense to defeat the prior judgment. *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 660 (6th Cir. 1990). The doctrine bars relitigation of every issue actually brought before the Court and every issue or defense that should have been raised in the previous action. *Id.*

> Here, *res judicata* bars Plaintiff from relitigating in federal court claims and issues that were previously decided by a state court. *Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009). Such claims and issues include whether Plaintiff owes child support, whether the individuals or entities involved in the child support proceedings violated his constitutional rights in carrying out the state court's child support order, whether Plaintiff's accounts could be seized to pay his outstanding child support obligations, and whether Plaintiff's passport could be suspended because of his outstanding child support obligations. These issues necessarily were decided in the state court proceedings.

*Graves*, 2025 WL 1898973, at *2-3 (N.D. Ohio, July 9, 2025); *see also Jones v. Mahoning Cnty. Child Support Enforcement Agency*, 2025 WL 418100, at *3 (N.D. Ohio Feb. 6, 2025).

### F. This Court Lacks Jurisdiction or Should Abstain from its Exercise

The above grounds for dismissal warrant dismissal with prejudice of most claims. While other reasons for dismissal likely exist, the interests of judicial economy preclude any more exhaustive analysis. Instead, the undersigned wraps up the recommendation for dismissal with a discussion of significant jurisdictional barriers that require dismissal of the case in its entirety.

#### 1. The Domestic Relations Exception to Federal Jurisdiction

More than a century ago, the Supreme Court held that the "subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not the laws of the United States." *Ex parte Burrus*, 136 U.S. 586, 593-94 (1890). To determine whether the exception applies, the court must review the relief that the plaintiff seeks to obtain. The fact that Plaintiff attempts to couch his claims in terms of constitutional violations is not dispositive. In the case presented, it is clear that what Plaintiff seeks is to force the state court to recalculate his child support obligations, including performing an "audit" that would result in an additional calculation of credits of derivative child support payments that – thus far – the state court has declined to award Plaintiff. In fact, Plaintiff specifically seeks injunctive and declaratory relief to declare the most recent state court decision (dated October 27, 2025) to be void. In short, no matter how Plaintiff spins his claims as civil rights violations, the relief he seeks confirms that he

wishes to overturn prior adverse state court decisions concerning his child support obligations, and to award him damages based on a recalculation of his child support.

In another recent case in which this Court rejected a similar attempt by an inventive plaintiff to overturn a prior state court domestics relations ruling, the Sixth Circuit affirmed on the basis of the domestic relations exception.

> [A]lthough Plaintiffs couched their claims against the defendants in terms of constitutional violations, a review of their amended complaint and prayer for relief reflects that the substance of the claims revolves around the state courts' decisions in the domestic-relations proceedings as they relate to S.E.'s custody and Edelstein's visitation rights. Importantly, for relief, Plaintiffs requested, among other things, "[t]he immediate return of Plaintiff S.E. to the custody of Plaintiff," and an injunction "returning the child to his mother and enjoining Judge Flottman from further violations of [Plaintiffs'] Constitutional rights"—by, e.g., "forcing Plaintiff S.E. to spend Sabbath with his non-observant father." As aptly stated by the magistrate judge, "[a]ll of [Plaintiffs'] requests seek to overturn prior state court domestic relations decisions, to dictate future custodial decisions," and "to award monetary damages to both Plaintiffs based on past judicial decisions." Plaintiffs thus have "positively sue[d] in federal court for ... child custody" and "seek[ ] to modify ... an existing child-custody decree." *Chevalier*, 803 F.3d at 797 (quoting *Catz*, 142 F.3d at 292). This case therefore is unlike others where we have declined to apply the exception because the claims and relief sought did not merely ask us to reconsider the merits of domestic-relation orders from state court.

*Edelstein v. Flottman*, No. 24-3156, 2025 WL 609487,*3 (6th Cir., Jan. 10, 2025) (affirming application of domestic relations exception to federal question case); *see also Beverly v. Clinton Cnty. Child Support Enforcement Agency*, No. 1:25-cv-404, 2025 WL 2647054, at *4 (S.D. Ohio Sept. 16, 2025) (holding that domestic relations exception applies where, in order to grant plaintiff reimbursement of child support payments, this court would be required to modify prior child support order); *Howard v. Hamilton Cnty. Job and Family Services*, No. 1:24-cv-631-MWM-SKB, 2025 WL 310422, at *2 (S.D. Ohio Jan. 28, 2025) ("because Plaintiff's amended complaint pertains to his child-support

obligations, such issues are within the exclusive jurisdiction of the states and fall outside the scope of federal jurisdiction"), R&R adopted at 2025 580849 (S.D. Ohio Feb. 21, 2025).

### 2. *Rooker-Feldman* Abstention[13]

"The *Rooker-Feldman* doctrine prevents a party who loses in state court from appealing that decision to the lower federal courts. *McCormick v. Braverman*, 451 F. 3d 382, 396 (6th Cir. 2006). In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 125 S.Ct. 1517 (2005), the Supreme Court cautioned that application of the doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.*, 544 U.S. at 284, 125 S.Ct. at 1521-22. To determine whether *Rooker-Feldman* bars a claim, the Court must look to the "source of the injury the plaintiff alleges in the federal complaint." *McCormick*, 451 F.3d at 393. For the reasons explained, there is no question that the doctrine applies here. *See Rouse v. Nessel*, No. 21-1630, 2022 WL 13631916, at *2 (6th Cir. July 11, 2022) (federal claims that require the district court to reject state child-support orders are barred under the *Rooker-Feldman* doctrine); *Danforth*, 76 Fed. Appx at 616 (same); *Raymond v. Moyer*, 501 F.3d 548, 553 (6th Cir. 2007) (holding that no exception applies to the *Rooker-Feldman* doctrine for procedural due process violations); *West v. Berkman*, No. 19-cv-12674, 2019 WL 12054757, at *1 (E.D. Mich. Nov. 6, 2019) (attack on child support enforcement orders barred by *Rooker-Feldman* doctrine). The *Rooker-Feldman* doctrine provides an

---

[13]*See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486, 103 S.Ct. 1303 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416, 44 S.Ct. 149 (1923)

independent basis for concluding that this Court lacks jurisdiction, regardless of whether the domestic relations exception applies. *Accord Graves v. Cuyahoga Cnty. Child Support Enforcement Agency*, No. 1:25-cv-749-DAP, 2025 WL 1898973, at *2-3 (N.D. Ohio, July 9, 2025) (holding that doctrine applied where source of injury was at least in part the state court child support judgment, where alleged injuries included the consequences imposed for violating the child support order including garnishment); *Prinzo v. Kentucky Child Support Enforcement Division*, 3:25-CV-453-JHM, 2025 WL 2210780, at *4 (W.D. Ky. Aug. 4, 2025); *Jones v. Mahoning Cnty. Child Support Enforcement Agency*, No. 4:24-CV-19082025 WL 418100, at *3 (N.D. Ohio, Feb. 6, 2025).

### 3. *Younger* Abstention

The *Younger* abstention doctrine provides another basis for dismissal of this case, because the record reflects that Plaintiff's state court appeal was only recently filed and remains pending.

> *Younger v. Harris* "requires a federal court to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings." *O'Neill v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008) (citing *Younger v. Harris*, 401 U.S. 37, 40-41 (1971)). "The *Younger* abstention doctrine provides that a federal court should abstain from interfering in a state court action when (1) there is an ongoing state judicial proceeding, (2) the state proceeding implicates important state interests, and (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges." *Graves v. Mahoning Cnty.*, 534 F. App'x 399, 406 (6th Cir. 2013) (citing *Fieger v. Cox*, 524 F.3d 770, 775 (6th Cir. 2008); *American Family Prepaid Legal Corp. v. Columbus Bar Ass'n*, 498 F.3d 328, 332 (6th Cir. 2007)). All three factors supporting abstention are present in this case.

*Prinzo*, 2025 WL 2210780, at *3.

### IV. Conclusion and Recommendation

For the reasons stated, **IT IS RECOMMENDED THAT** all claims contained in Plaintiff's complaint be **DISMISSED** with prejudice pursuant to 28 U.S.C. §1915(e)(2)(B).

However, should the district judge disagree, the R&R alternatively recommends that Plaintiff be directed to file a third amended complaint that does not "incorporate by reference" any prior allegations but that instead sets out in full any allegations and claims that have not been dismissed on initial screening in a short, plain statement.[14]


  s/Stephanie K. Bowman
Stephanie K. Bowman
United States Chief Magistrate Judge

---

[14] While this R&R was about to docketed, Plaintiff filed yet another motion. This one for temporary restraining order and preliminary injunction (Doc. 20).  This newly filed motion is herein denied as moot, subject to possible refiling should this R&R be rejected.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ADAM M. GLOWKA,                                    Case No. 1:25-cv-838

     Plaintiff,                                        Hopkins, J.
                                                         Bowman, M.J.

     v.

WARREN COUNTY CHILD SUPPORT
ENFORCEMENT AGENCY, et al.,

     Defendants.

**NOTICE**

     Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).